UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MONG TUYEN THI TRAN,<br><br>　　　　Petitioner,<br><br>　v.<br><br>BRUCE SCOTT; CAMMILLA WAMSLEY; KRISTI NOEM; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br>　　　　Respondents. | Case No. 2:25-cv-01886-TMC-BAT<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Mong Tuyen Thi Tran petitions the Court under 28 U.S.C. § 2241 for relief from physical custody by Immigration and Customs Enforcement ("ICE"). Dkt. 4. For the reasons stated below, the Court GRANTS the petition.

**I.　BACKGROUND**

**A.　Petitioner's Re-Detention**

Petitioner was born in South Vietnam in 1981 and admitted as a lawful permanent resident ("LPR") to the United States in 1993, when she was 11 years old. Dkt. 4 ¶ 18. In 2001, Petitioner plead guilty to forgery and larceny charges in Virginia, described by Petitioner as follows in her verified complaint:

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

In 2001, when Petitioner was 20 years old, she was convicted in Fairfax County, Virginia for Uttering a Forged Check, Obtaining Money by False Pretense, and Grand Larceny by check and sentenced to three years with two years and eight months suspended. At that time, she was dating a man who was abusive and manipulative. During the summer of 2001, she was working as a receptionist at a physician's office. Her boyfriend was not working and in need of money. He pressured her into taking checks from her employer for his own individual use. Soon thereafter, realizing that what she did was wrong, she confessed to her employer that she took funds from the business. Her employer asked her to return the funds, but she was unable to recover the funds from her boyfriend. Uncertain what to do next, she went to a police officer she knew and learned the employer had filed charges against her. She turned herself in, pled guilty, and completed her sentence.

*Id.* ¶ 21; *see also* Dkt. 14-1. On December 16, 2003, the Immigration and Naturalization Service ("INS") detained Petitioner and charged her with being removable for having an "aggravated felony" and two crimes involving moral turpitude. Dkt. 4 ¶ 22; *see also* Dkt. 14-2. An immigration judge ordered Petitioner removed to Vietnam and denied her applications for withholding of removal and protection under the Convention Against Torture. Dkt. 4 ¶ 23; *see also* Dkt. 14-3. Petitioner did not appeal. Dkt. 4 ¶ 24.

On June 7, 2004, Vietnam informed Petitioner that there was no repatriation agreement between the United States and Vietnam and that it would not issue her a travel document. *Id.* ¶ 25. Petitioner was then released from immigration custody on an order of supervision on July 24, 2004. *Id.* ¶ 26; *see also* Dkt. 14-4. Petitioner alleges that she complied with the order of supervision and never missed a check-in appointment or had any interaction with the criminal legal system for 21 years. Dkt. 4 ¶ 27. She married in 2003, had four children, and earned a B.S. in Health Sciences from George Washington University in 2012—giving the student commencement address at her graduation. *Id.* ¶ 28.

ICE detained Petitioner when she appeared at the ICE office in Baltimore for an annual check-in appointment on May 12, 2025. *Id.* ¶ 29. Petitioner has been detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington since May 24, 2025. *Id.* ¶ 30. On

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

July 1, ICE Deportation Officer Daniel Strzelczyk handed Petitioner a notice of revocation of release, dated May 12, 2025. *Id*. ¶ 31; Dkt. 14 ¶ 11; Dkt. 14-5. The officer asked Petitioner to sign the proof of service, which stated that a different officer—Delkino Pinkston, based in Baltimore—served the notice on Petitioner on May 12, 2025. *Id*. According to Petitioner, Strzelcyzk acknowledged this discrepancy, but stated that "if she did not sign, it would 're-set the time clock.'" Dkt. 4 ¶ 31. Strzelcyzk states that he does not remember telling Petitioner that changing the date would have any consequences. Dkt. 14 ¶ 11. Petitioner contends she signed the form because she feared an extended detention if she did not sign. Dkt. 4 ¶ 31.

Despite having detained Petitioner since May, ICE still has not obtained a travel document for her, and has not asked Petitioner to complete the self-declaration form required for Vietnam to process a request by the US for a travel document. *Id*. ¶¶ 33–35; Dkt. 16-2. Petitioner does not have a Vietnamese passport or birth certificate from Vietnam and does not know if there is any official record of her birth in Vietnam because she was born at home. Dkt. 4 ¶ 36.

Petitioner filed her habeas petition, Dkt. 4, concurrent with a motion for a TRO, Dkt. 3, and accompanying affidavits and exhibits. Dkt. 3-1–Dkt. 3–16.[1] The Court directed the parties to meet and confer, whereupon the parties agreed to an expedited briefing schedule for the habeas petition in lieu of a TRO and stipulated that the government would not deport Petitioner to a third country while this case is pending. Dkts. 7–10. Respondents submitted their response on October 7, 2025, and Petitioner replied on October 9, 2025.

B.      **Deportation of Vietnam War Refugees**

After the Vietnam War, many Vietnamese people "fled the country to escape political persecution." *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020). Until 2008,

---

[1] Petitioner also submitted a prior habeas petition in the District of Maryland. *Tran v. Baker*, No. 25-cv-01598-JRR; Dkt. 3-4–Dkt. 3-6.

Vietnam refused to repatriate Vietnamese immigrants whom the United States had ordered removed. *Id*. In 2008, the United States and Vietnam reached an agreement under which Vietnam agreed to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995. *Id.* This meant that Vietnamese immigrants who had arrived before that date would not be considered for repatriation. *Id.*

Until 2017, ICE "maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them." *Id.* Thus, ICE typically detained pre-1995 Vietnamese immigrants for no more than ninety days after their removal orders became final. *Id.* After that time expired, most detainees were released on orders of supervision. *Id.*

In 2017, the United States and Vietnam began to renegotiate the 2008 agreement. *Id.* Though the 2008 agreement was not formally amended, Vietnamese officials "verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to accept any of them." *Id.*

In accordance with this change, ICE began detaining pre-1995 Vietnamese immigrants for longer than ninety days after their final orders of removal. *Id.* at 1083–84. ICE reasoned that Vietnam might issue the necessary travel documents for repatriation. *Id.* at 1084. ICE also began re-detaining some individuals who had been released on orders of supervision. *Id.*

But this policy did not last long. *Id.* In 2018, following additional meetings between United States and Vietnamese officials, "ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely." *Id.* ICE accordingly instructed field offices to release pre-1995 Vietnamese immigrants within ninety days of a final order of removal. *Id.*

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

In 2020 the policy changed again when the United States and Vietnam signed a Memorandum of Understanding ("MOU") to create a process for deporting pre-1995 Vietnamese immigrants. *See generally* Dkt. 3-8. Under Section 4 of the MOU, Vietnam affirmed that it "intends to issue travel documents where needed, and otherwise to accept the removal of an individual subject to a final order of removal from the United States" if the individual meets four conditions. *Id.* at 3–4. First, the individual must have Vietnamese citizenship (and only Vietnamese citizenship). *Id.* at 3. Second, the individual must have violated U.S. law, been ordered removed by a U.S. authority, and completed any sentence of imprisonment. *Id.* Third, the individual must have resided in Vietnam prior to arriving in the United States and have no right to reside in any other country or territory. *Id.* at 4. The fourth condition has been redacted from the publicly disclosed version of the MOU filed by Petitioner, and Respondents have not offered any explanation of what it is. *See id.* Petitioner asserts that from September 2021 to September 2023, the United States deported and repatriated only four pre-1995 immigrants to Vietnam. Dkt. 4 at 9. Petitioner has also submitted a declaration from a paralegal working with detained Vietnamese nationals at NWIPC who avers that of 30 Vietnamese detainees she is aware of who have been detained since March 2025, none have yet been removed to Vietnam. Dkt. 16-3.

C.    **ICE's Requests for Travel Documents**

In support of its opposition, ICE submitted a declaration from Daniel Strzelczyk, the Deportation Officer at NWIPC—working for ICE's Office of Enforcement and Removal Operations ("ERO")—who served Petitioner with a notice of revocation of release. Dkt. 14. Strzelczyk states that on April 8, 2025, ERO Baltimore "initiated a travel document packet in order to ultimately obtain the requisite documents for Petitioner's removal." *Id.* ¶ 9. It is unclear what it means to "initiate a travel document packet," and Respondents have not submitted any

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

documentation that might show what was done. What is clear is that when ICE detained Petitioner on May 12, 2025, the statement in the notice of revocation that Ms. Tran's case was "under review by the Government of Vietnam for the issuance of a travel document" was not true. *See* Dkt. 14-5.

After Petitioner filed this habeas action, Strzelczyk contacted the ICE Headquarters for Removal and International Operations ("HQ-RIO") and requested an update on the supposed travel document request from April 8, 2025. *Id*. ¶ 12. Strzelczyk learned that "HQ-RIO did not have the original request." *Id.* ¶ 12. Respondents have provided no explanation for why. According to Strzelczyk, he then re-submitted the same request on October 1, 2025. *Id*. Strzelczyk further explains that "HQ-RIO has since confirmed that the ERO attaché in Vietnam has submitted the travel document packet to the government in Vietnam with a request to expedite its processing." *Id*. Strzelczyk states that in his experience, "Vietnam has been processing travel documents within thirty days" and there is a significant likelihood of Petitioner's removal to Vietnam in the reasonably foreseeable future. *Id*. ¶ 13. Respondents have not attached any documents to the declaration that might show more precisely what has been submitted to or requested from the government of Vietnam.

Respondents also refer to a declaration they submitted in another immigration habeas proceeding in this District. Dkt. 13 at 8 (citing Second Declaration of Deportation Officer Enrique Rodriguez, *Tang v. Bondi*, No. 2:25-cv-01473-RAJ-TLF, Dkt. 25 (W.D. Wash. Sept. 10, 2025) (the "Rodriguez Declaration")). This declaration references yet another case—one before this Court, *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288 (W.D. Wash. Aug. 21, 2025)—and states that Vietnam issued travel documents for a pre-1995 Vietnamese detainee about three weeks after this Court granted issued a preliminary injunction ordering his release.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 6

Rodriguez Declaration, ¶ 4; *see* Dkt. 13 at 8 ("It took Vietnam 27 days to issue Nguyen's travel document after the request reached the ICE attaché for Vietnam.").

Petitioner's counsel, Jennifer Pasquarella—who was also counsel for the petitioner in *Nguyen*—submitted a declaration in support of Petitioner's reply contesting Rodriguez's assertions. Dkt. 16-1. Pasquarella notes that, one day before the government's response in *Nguyen* was due, she was told by government counsel that Nguyen's travel document was "in the mail" but that counsel had not seen a copy of the document. *Id.* at 2. Pasquarella further avers that, to date, ICE has still not presented her or Nguyen with a copy of any travel document. *Id.*

## II. LEGAL STANDARD

To succeed on her habeas petition, Tran "must show she is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).

The re-detention and revocation of supervised release of an immigrant is governed by 8 C.F.R. § 241.13(i). ICE may revoke a noncitizen's release (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(1),(2).

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

### III. DISCUSSION

Petitioner is a noncitizen who has been present in the United States for 32 years. Dkt. 4 at 5. She is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for a total of seven and a half months, Dkt. 4 at 2, Petitioner's detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. And Petitioner's evidence showing (1) the historically low number of removals to Vietnam for immigrants who arrived in U.S. pre-1995, *see* Dkt. 3-1 at 9, Dkt. 16-4; (2) the government's failure to deport her for 21 years, since Vietnam first refused a travel document request for her in 2004, *see* Dkt. 3-4 at 2–3; and (3) that the government detained her without securing a travel document from Vietnam and failed to make any progress toward obtaining one between May and October, *see* Dkt. 3-4 at 3, Dkt. 14 ¶ 12, "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.* at 701. In their Response, the government concedes that "Tran's earlier travel document request was not processed correctly" but reassures the Court that ICE "has re-submitted Tran's travel document request and has requested expedited processing." Dkt. 13 at 1. Specifically, Respondents maintain that ERO Baltimore "initiated a travel document packet" on April 8, 2025, about one month before they detained Petitioner on May 12, 2025. Dkt. 14 ¶¶ 3–4. Strzelczyk checked the status of ERO's request on October 1, 2025—after Petitioner filed her

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 8

habeas petition—and learned HQ-RIO "did not have the original request." *Id.* ¶ 12. Strzelczyk then re-submitted the request to HQ-RIO the same day. *Id.* Strzelczyk also states, without providing any examples, that "Vietnam has been processing travel documents within thirty days" and that he believes Tran will be removed to Vietnam "in the reasonably foreseeable future." *Id.* ¶ 13.

Respondents also rely on the Rodriguez Declaration to demonstrate Vietnam is issuing travel documents for similarly-situated pre-1995 Vietnamese immigrants. *See* Rodriguez Declaration ¶ 4 ("In Nguyen's case, a TDR was submitted on or about July 31, 2025; on August 25, 2025, the attaché in Vietnam confirmed a travel document ("TD") would be issued; and on September 3, 2025, the TD was issued; as of September 8, 2025, the TD was still in route to the United States.").

The government's representations here are not persuasive enough to rebut Petitioner's showing that her detention has become indefinite. On July 1, 2025, Strzelczyk served Petitioner a notice of revocation of release dated two months prior and listing the wrong officer (Pinkston). Dkt. 4 ¶ 31; Dkt. 14 ¶ 10–11; Dkt. 14-5. The notice incorrectly stated Petitioner's case was "under review by the government of Vietnam for the issuance of a travel document" when neither the government of Vietnam, nor ICE HQ-RIO, had received a travel document request. *Id.*; Dkt. 14 ¶ 12. In Petitioner's earlier, unsuccessful habeas action, an ICE officer represented that her removal was "likely to occur within two months." Dkt. 3-6 at 5. In fact, ICE took no further steps to obtain a travel document for Petitioner or effectuate her removal until after she filed this habeas action—while she has languished needlessly in detention for five months. And although Respondents claim a travel document was issued in *Nguyen*, a similar case involving a pre-1995 Vietnamese immigrant, counsel from that case states that neither she nor her client have received a travel document or an electronic copy, more than a month after counsel for the

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

government represented it was "in the mail." Dkt. 16-1 at 2. Finally, Respondents provided no data on the number of requests they have recently submitted to Vietnam, how many requests Vietnam has granted, or how many in either category have concerned pre-1995 Vietnamese immigrants like Tran. Nor have Respondents provided any of the underlying documents that might support the assertions in the Strzelczyk declaration.

These facts undermine Respondents' assertion that Petitioner will be removed "in the reasonably foreseeable future." Dkt. 14 ¶ 13; *see Chun Yat Ma v. Asher*, No. C11-1797 MJP, 2012 WL 1432229, at *4 (W.D. Wash. Apr. 25, 2012) ("conflicting statements concerning removal" indicate removal is unlikely); *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, at *4 (D. Mass. June 20, 2025) (lack of data on recent removal rates of pre-1995 Vietnamese immigrants undermined argument that removal was likely). Petitioner has shown, and Respondents have failed to rebut, that Petitioner's removal to Vietnam is not reasonably foreseeable.

Because there is not a significant likelihood Vietnam will accept Petitioner in the reasonably foreseeable future, her detention is no longer permitted by the INA as construed in *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful and her release is appropriate. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable). The Court therefore GRANTS the petition for writ of habeas corpus. Dkt. 4.

Petitioner also appears to raise several civil claims for prospective injunctive relief adjacent to her habeas petition. *Id*. ¶¶ 83–92. For example, Petitioner seeks to enjoin the government from removing her to a third country "without notice and meaningful opportunity to

respond [. . .] in reopened removal proceedings." *Id*. at 21. It is not clear to the Court whether Petitioner intends to continue pursuing these claims after obtaining her release. The parties are directed to meet and confer to discuss whether these claims remain after Petitioner's release and, if they do, propose a deadline for Plaintiff to amend her complaint and Respondents to answer in light of the current lapse in federal appropriations for the Department of Justice.

### IV.   CONCLUSION

For these reasons, the Court GRANTS the petition for writ of habeas corpus. Dkt. 4. Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are ORDERED to immediately release Petitioner Mong Tuyen Thi Tran from custody under the conditions of her most recent order of supervision.

The Parties are further ORDERED to meet and confer to discuss whether Petitioner will continue to pursue her third-country removal claims after her release and, if so, notify the Court by October 20, 2025 of a proposed deadline for any amendments to Petitioner's complaint and Respondents' answer.

Dated this 12th day of October, 2025.

Tiffany M. Cartwright
United States District Judge